IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| COLLIN FREITES | : | |
| 18 Garland Lane | : | |
| Willingboro, NJ 08046 | : | |
|        Plaintiff, | : | CIVIL ACTION |
| | : | No.: |
|        v. | : | |
| | : | |
| CHERRY HILL IMPORTS | : | JURY TRIAL DEMANDED |
| 2261 Route 70 West | : | |
| Cherry Hill, NJ | : | |
| | : | |
| THE EXTENSIS GROUP LLC | : | |
| 900 Route 9 North | : | |
| Woodbridge, NJ 07095 | : | |
|        Defendants. | : | |

## **CIVIL ACTION COMPLAINT**

This action has been initiated by Collin Freites (hereinafter referred to as "Plaintiff," or "Freites" unless indicated otherwise) for violations of the Family Medical Leave Act (FMLA) 29 U.S.C. §2612 *et al.*; the Americans with Disabilities Act (ADA), 42 U.S.C. §12101, *et seq.*, Title VII of the Civil Rights Act of 1964 and 1991, 42 U.S.C. § 2000e, et seq. and (Title VII), 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 (Section 1981), the New Jersey Law against Discrimination ("NJ LAD") and New Jersey common law. Plaintiff suffered from health problems and was the subject of discrimination and retaliation when he was terminated after exercising his rights under the ADA and Defendant failed to provide him appropriate medical leave under FMLA while he was employed. Defendants also maliciously interfered with Plaintiff's efforts to secure new employment.

1

## JURISDICTION AND VENUE

1. This Court may exercise original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

2. This Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to the claim(s) within the Court's original jurisdiction that they form part of the same case or controversy.

3. This Court has personal jurisdiction over Defendants because Defendants maintain businesses in New Jersey and have sufficient minimum contacts with this judicial district that the exercise of such jurisdiction comports with judicial notions of fair play and substantial justice, satisfying the standards setforth in *International Shoe Company v. Washington,* 326 U.S. 309 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391, venue is properly laid in this district because Defendants conduct substantial, systematic and continuous activity in New Jersey and are subject to personal jurisdiction in New Jersey.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is a Black/African-American male adult individual with an address as set forth above.

8. Defendant Cherry Hill Imports, (hereinafter referred to as "Defendant CHI" unless specified otherwise) is an automobile dealership in

South Jersey in the business of selling luxury, performance and specialty vehicles.

9. Defendant Extensis Group LLC (hereinafter referred to as "Defendant Extensis" unless specified otherwise) is a human resources outsourcing provider (HRO) and professional employer organization (PEO).

10. At all times relevant herein, Defendant CHI outsourced to Defendant Extensis all human resources functions including payroll, benefits and risk management with Defendant Extensis acting as a PEO.

11. At all times relevant herein, Plaintiff physically worked at Defendant CHI's Cherry Hill, NJ location while Defendant Extensis provided human resources services, including issuing disciplinary documents to Plaintiff and issuing paychecks.

12. Based on the foregoing, at all times relevant herein, Defendant CHI and Defendant Extensis were Plaintiff's joint employers.

13. Defendants, by and through their agents, servants, and employees, acted at all times relevant herein within the course and scope of their employment.

## FACTUAL BACKGROUND

14. The foregoing paragraphs are fully incorporated herein as though set forth at length.

15. Plaintiff worked for Defendants from 2016 until January 9, 2020 when Defendant unlawfully terminated his employment.

16. At the time Defendants unlawfully terminated Plaintiff, he worked as a Parts Advisor and managed their website selling automotive parts. Plaintiff received $12.50 per hour, overtime, plus commission. During the three (3) years he was employed, he earned between $53,000 and $64,000 per year.

17. During Plaintiff's employment, and prior to Plaintiff's unlawful termination, Plaintiff had informed Defendant CHI of a medical condition/diagnoses.

18. Specifically, Plaintiff had informed Defendant CHI that he suffers from Irritable Bowel Syndrome (IBS). Plaintiff also informed them that he has Attention Deficit Hyperactivity Disorder (ADHD) for which he treats with mental health therapy and prescription medication.

19. On or about March 2017, Plaintiff's IBS symptoms started to flare causing him to report to work late. On or around March 17, 2017 Plaintiff's managers questioned him about his latenesses and he explained to them that he had a disability and that he might need an accommodation. The meeting ended and the conversation was "tabled."

20. On or around April 26, 2017 Defendant CHI issued a verbal warning regarding latenesses and was asked if he wanted to continue to be employed. Plaintiff assured his manager that he wanted to continue his employment but that his IBS symptoms were making it difficult.

21. On or around August/September 2017, Defendant CHI warned Plaintiff that he would be subject to a written warning due to continued latenesses.

Plaintiff again explained that he had a disability and that a reasonable accommodation would be appropriate.

22. Neither Defendant ever offered Plaintiff a Reasonable Accommodation Request Form or FMLA intermittent leave during any of the meetings regarding his latenesses held in March 2017, April 2017, August/early September 2017.

23. On September 6, 2017, Defendant CHI issued a Written Warning written on Extensis letterhead to Plaintiff during a meeting with the Parts Manager, Assistant Parts Manager and Department Chair. At that time, Plaintiff reiterated that he had a disability and needed an accommodation.

24. The Written Warning placed Plaintiff on an "Action Plan" with a probation of six (6) months. The "Action Plan" called for Plaintiff to be clocked in and at his work station by his start time of 8:30 am. If he was unable to arrive on time, he was to contact his department head directly with a reason for the lateness in accordance with Section 2.7 of Defendant CHI's employee manual. The "Action Plan" did not outline any consequences for failure to adhere to the probation terms.

25. Plaintiff submitted a rebuttal which, in part, reiterated his disability and that he was never offered a reasonable accommodation and that Defendant CHI was running afoul of the EEOC's "Procedures for Providing Reasonable Accommodations for Individuals with Disabilities."

26. Shortly after Plaintiff submitted his rebuttal to Ms. Glembocki (CHI head of HR), Plaintiff asked Ms. Glembocki to put him in contact with the EEO Officer at Defendant Extensis. Ms. Glembocki stated that there was no need to

contact Defendant Extensis and that he was "fine" and to "do what you are doing, considering all you are dealing with. You are fine."

27. The foregoing was the start of a reasonable accommodation providing flexible hours within which to report to work. Neither Defendant requested medical documentation nor did they otherwise memorialize the accommodation.

28. Specifically, the accommodation allowed Plaintiff to arrive to work late if he was experiencing IBS symptoms as long as he notified his direct manager, Frank Torres and/or Department Manager, Ralph Vanaman.

29. At no time before or after Plaintiff's disclosure did either Defendants offer intermittent leave as provided under the FMLA.

30. Around July and August 2019 Plaintiff began arriving to work closer to 10 am. Prior to that time he was arriving between 8:40 am – 9:30 am but would always contact his manager if he was going to be late.

31. On or about December 12, 2019 Plaintiff met with Ms. Glembocki and Defendant CHI's General Manager, Amanda DiMattia, who told him that his latenesses were accepted because of his condition. After the meeting they asked him if he was okay because his arrival times had been getting later. They never asked him if he needed any additional accommodation or offered intermittent leave.

32. During the December 11th meeting Plaintiff also advised Ms. Glembocki and Ms. DiMattia that he was seeing a therapist.

33. Plaintiff took a one-week vacation to Africa at the end of December 2019 with a return to work scheduled for January 8, 2020.

34. Due to unforeseen circumstances, Plaintiff's flight home was longer than anticipated and he did not arrive at Philadelphia International Airport until January 8, 2020.

35. Prior to leaving for his vacation, Plaintiff parked his car at the Defendant CHI's location for repair and notified his supervisor, Frank, that he was going to pick up his car since it was after-hours, Plaintiff text Frank when he arrived and retrieved his vehicle.

36. When Plaintiff arrived at work on January 9, 2020 he was called into a meeting with Ms. Glembocki and Ralph Vanaman, the Parts Manager, and was terminated.

37. About a week later Plaintiff received a termination letter on Defendant CHI's letterhead dated January 10, 2020 stating that he was being terminated for a no-call, no-show on January 7 and 8 and his latenesses.

38. Specifically, the letter stated that "You made no attempt to contact anyone stating you were unable to return, **that along with your constant lateness. We have made allowances for you to come in later than your start time, however now you are coming in later and later. Your arrival is closer to 10 am than your start of 9 am.**" (emphasis added)

39. Not only was it untrue that Plaintiff did not contact anyone in regards to his whereabouts, but Defendant CHI's Employee Handbook drafted by Defendant Extensis states that 3 consecutive days of no-call, no-show is grounds for termination.

40. Following his termination, Plaintiff attempted a job search and was offered a job with the federal government. However, the offer was rescinded after information was received from Defendants regarding Plaintiff's termination.

41. As of the date of this filing, Plaintiff remains unemployed.

### First Cause of Action
### Violations of the Family and Medical Leave Act ("FMLA")
### - Interference and Retaliation –

42. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43. Plaintiff worked for Defendants for more than one (1) year.

44. Defendants is engaged in a business that affects interstate commerce.

45. Plaintiff worked for Defendants for at least 1,250 hours in every year prior to his termination.

46. At all relevant times, Defendants employed at least 50 employees within 75 miles of Plaintiff's work location for at least 20 calendar weeks.

47. On January 10, 2020 Plaintiff was eligible for FMLA benefits.

48. Defendants failed to affirmatively offer and/or characterize Plaintiff s need to arrive late to work for medical reasons as FMLA qualifying or to provide him with individualized notifications of his rights under the FMLA.

49. Plaintiff was terminated in part due to latenesses to work, which should have been FMLA qualifying leave, due to his serious medical condition and therefore constituted FMLA retaliation.

50. Defendant's actions in refusing to offer FMLA benefits, specifically intermittent leave and for counting FMLA-qualifying absences against him in the

decision to terminate him; for not following notification provisions; for not designating time as FMLA-qualifying properly all constitute interference violations of the FMLA.

### Second Cause of Action
### Violations of the Americans with Disabilities Act ("ADA")
### -Retaliation-

51. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52. Plaintiff engaged in protected activity pursuant to the ADA by requesting an accommodation thereby asserting rights guaranteed by statute, including his right to accommodation and his right to be treated in a non-discriminatory manner regardless of his disability, record of impairment and/or Defendants' perception thereof.

53. Defendants' response to Plaintiff's accommodation would have been materially adverse to a reasonable worker and could well have dissuaded a reasonable worker from making or supporting a request for accommodation or otherwise advocating for their rights under the ADA.

54. In terminating Plaintiff in part due to his latenesses which were pursuant to his disability and allowed under an accommodation granted by Defendant CHI, Defendants' actions were causally-connected to Plaintiff's activity and constitutes illegal retaliation in violation of Plaintiff's rights pursuant to Section V of the ADA.

9

## Third Cause of Acton
### Violations of Title VII, Section 1981 and NJ LAD
### -Race Discrimination-

55. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

56. Title VII of the Civil Rights Act of 1964 and 1991 and the New Jersey Law Against Discrimination make it unlawful employment practice for an employer to discriminate against an individual with respect to the terms and conditions or privileges of employment based on race.

57. By the conduct described above in regards to Defendants' termination of Plaintiff, Defendant intentionally deprived him, a Black/African American citizen, of the same rights as are enjoyed by White citizens to the creation, performance, enjoyment and all benefits and privileges, of their contractual employment relationship with Defendants in violation of 42 U.S.C. §1981.

58. As a result of Defendants' discrimination in violation of Section 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendant's actions, thereby entitling him to compensatory damages.

59. Defendants were employers within the meaning of the above-referenced statutes.

60. Plaintiff was an employee within the above-referenced statutes.

61. Plaintiff is a member of a protected class as he is Black/African-American.

62. Plaintiff was qualified for his job as he was working for three (3) years and was never disciplined for work performance.

63. Plaintiff suffered from disparate treatment by Defendants who intentionally discriminated against Plaintiff through their conduct by treating him differently than White employees with accommodations, which included terminating him based on his race.

64. Specifically, Mike Moxley (White male) has IBS and calls out of work frequently and was never fired.

65. Mr. Moxley also reports to Ralph Vanaman.

66. Plaintiff suffered an adverse employment action when he was terminated.

67. As a direct and proximate result of Defendants' discriminatory conduct, Plaintiff has suffered emotional injuries, including but not limited to past and present pain and suffering, anxiety, depression and humiliation.

### Fourth Cause of Action
### Violations of the NJ LAD
### - Retaliation –

68. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

69. Defendant CHI permitted Plaintiff to receive an accommodation on or about September 2017.

70. As a result of Plaintiff's latenesses pursuant to that accommodation, Plaintiff was terminated.

71. This unlawful retaliation constitutes a violation of the NJ LAD.

### Fifth Cause of Action
### Violations of the NJ LAD
### - Actual and Perceived Handicap Discrimination –

72. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

73. Plaintiff suffered from IBS and ADHD.

74. Defendants were aware of Plaintiff's health conditions.

75. Plaintiff provided medical documentation related to his health conditions to Defendants.

76. Plaintiff was subjected to discrimination when he was unlawfully denied the benefits and privileges of employment; and subjected to different terms and conditions of employment because of his known health conditions and/or because Defendants perceived Plaintiff as being unable to perform his job due to his perceived health conditions.

77. Plaintiff was terminated because of his known health conditions and/or because Defendant perceived Plaintiff as being unable to perform his job due to his perceived health conditions.

78. These actions as aforesaid constitute violations of the NJLAD.

### Sixth Cause of Action
### Tortious Interference with Prospective Economic Advantage

79. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

80. Prior to Plaintiff's termination, he began searching for new employment.

81. In December 2019, Plaintiff received a tentative offer of employment from the Field Operating Offices of the Office of the Secretary of the Army as a Contract Specialist, GS-1102-7 with a starting salary of $48,375.

82. The Army contacted Defendants as part of its background check.

83. Defendants intentionally supplied false information to the Army regarding Plaintiff's unlawful termination.

84. As a direct result of the information provided by Defendants, in February 2020, the Army rescinded the job offer causing a loss of prospective salary listed above.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

C. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendant's actions, as permitted by applicable law;

D. Plaintiff is to be awarded liquidated and/or punitive damages to punish Defendant for its willful, deliberate, malicious, and outrageous conduct and to deter Defendant or other

employers from engaging in such misconduct in the future (as permitted under applicable claims/laws);

      E.    Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

      F.    Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees as provided by applicable federal and state law.

## JURY DEMAND

Plaintiff demands trial by jury.

Respectfully submitted,

**McCain Law, PC**

By: */s/ Zakia E. Moore*
Zakia E. Moore, Esquire
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-236-1086

Date: September 3, 2020

## VERIFICATION

hereby verify that the statements contained in this Complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to penalty of perjury 28 USC §1746, relating to unsworn falsification to authorities.

8/29/2020
_____
Date

*[signature: Collin Freites]*
_____
Collin Freites